[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION STATEMENT OF THE CASE
The defendant was the general contractor, hired by Mr. and Mrs. Peter Miller to construct their residence on property located in Norwalk, Connecticut.
The plaintiff provided materials for the construction of the residence and seeks to recover from the defendant for expenses it occurred in connection with the ordering of a series of stone balustrades, and their complimentary adornments.
This dispute stems from the confusing circumstances involving the relationship between the parties, for in addition to this balustrade project, the plaintiff supplied materials to the defendant for other phases of the construction project.
The present dispute centers around Exhibit B dated May 11, 1999. The plaintiff claims this item, its proposal to provide all the stone for the balustrades, became a valid and binding contract between the parties when it was returned by the defendant with the notation "Process ASAP" and signed by David Brown, a principal of the defendant.
The defendant denies that this was its intent and claims the proposal remained just that — a proposal, and was not a final contract.
 DISCUSSION I The "Proposal" Per Se
Putting aside for the moment the evidence elicited from the eight witnesses who were called, the court will examine first the transaction itself.
Exhibit B is reproduced herein as "Appendix A" in the exact format it was introduced at trial.
The handwriting, printing and interlineations were placed on the proposal (Exhibit A) by David Brown.
On September 13, 1999 the plaintiff faxed to the defendant an CT Page 6142 itemization of the charges with further explanation of the terms and conditions of delivery, etc. including language dealing with any unpaid balance, interest and an attorney's fee if collection were necessary. (Exhibit C).
This document refers to "this agreement," urges the recipient to "read the contract," and refers to other conditions on the reverse side.
The defendant produced no written or printed instrument stating it objected to the terms, descriptions, prices or language of Exhibits B or C. Nor did it offer an alternative explanation for what "Process ASAP" meant.
Applying basic contract law to these facts, the court finds that the plaintiffs proposal was accepted by the defendant and a binding contract was entered into, rendering the defendant liable in damages for its breach or nonperformance.
 II The defendant's claims denying the existence of a contract. A.
The defendant emphasized the role of various invoices and statements in support of its claim that the plaintiff acknowledged the lack of a contract by crediting the defendant with the amount of the deposit called for in Exhibit B and noting that the transaction was cancelled (Exhibits 3, 4 and 6). It also produced invoices showing no charge for the deposit in later billings.
The plaintiffs response was that its bookkeeper was improperly influenced to enter this credit and subsequent invoices carried the deposit as a charge. The charge appears on subsequent invoices, with no recorded objections from the defendant. (See Exhibits G and H).
 B.
Three principals of the defendant corporation testified as to this transaction.
The testimony of Jay Condon was of minor relevance since this was not his project and any communications he received he passed on to David Brown.
David Brown testified and explained his "Process ASAP" notation as a CT Page 6143 request for a revision. There is nothing on Exhibit B to suggest there was anything to revise and it clearly indicates shop drawings were forthcoming.
Brown's testimony is seriously weakened by his testimony with respect to several exhibits that support the plaintiffs position.
Exhibit C, referred to above in Section I, was never rejected nor questioned by David Brown, who was the project manager for the Miller residence. In addition to the information on this instrument referred to in Section I, it also indicates the material which was "on order" at the factory.
On October 8, 1999, the plaintiff faxed to the defendant a series of questions, to which three pages of sketches were affixed. When David Brown testified, he acknowledged the receipt of shop drawings though he claimed they contained some errors. And, he ventured the opinion that the questions in Exhibit N came from the fabricator — that is, the Indiana Stone Company which was supplying the finished stone items. This had to serve as an indication to the defendant that the plaintiff had placed an order, that shop drawings had been prepared (in accordance with Exhibits B C), and that the fabricator was preparing to do the stone preparation.
Then, on October 22, 1999 a letter of transmittal (Exhibit O), referring to two sets of drawings forwarded on October 8, was sent to the defendant.
Mr. Brown admitted no written response was made to Exhibit N. He did not deny receiving Exhibit Q dated December 17, 1999. That fax refers to the order of September 10, and advises that the blocks have been rough cut and the defendant's final revisions are awaited.
The plaintiff also produced Exhibit K, fax dated March 2, 2000 which included a page headed "Contract Change Order #CB-001." All Mr. Brown had to say about this was that it couldn't be a contract change order as there was no contract, but it took him till some time after March 2, 2000 to call the plaintiff and deny the existence of a contract. As of March 6, 2000 this claim had apparently not been conveyed to the plaintiff, as the plaintiffs fax to the defendant of that date refers to the change order and a price reduction (Exhibit S).
According to the plaintiffs Exhibit J, dated April 5, 2000, on March 30 the defendant advised the plaintiff it would not proceed with the disputed contract. CT Page 6144
Keith Brown, president of the defendant corporation, was also called to testify. He produced no writings to support the contention that there was no contract and that the plaintiff was so advised. He also referred to invoices to show that the plaintiff had "cancelled" the transaction and claimed to have spoken to the plaintiff to indicate no order for materials had been given.
Plaintiffs Exhibit L, a letter addressed to Keith Brown on March 22, 2000, rebuts that claim and the plaintiff contends that giving the defendant a credit was a gesture of good will, aimed at restoring the business relationship.
Mr. Brown's testimony about his communication with Indiana Stone presented questions, but actually had no bearing on the ultimate issue — the existence of or lack of a contract.
The defendant displayed a remarkable lack of responsibility in its response to the numerous documents flowing from the plaintiff.
The court cannot place any credence on its assertion that its principals never felt a contract existed. One would expect a seasoned businessman — here we had three — confronted with these documents to act promptly to put an end to what they now claim was the plaintiffs overreaching.
 III The plaintiff's evidence in support of the contract.
As noted above in Sections I and II, the plaintiff produced a voluminous paper trail in support of its claim. The court has highlighted this evidence and will not repeat it here. The court must conclude that these documents constitute substantial evidence that a contract was intended by both sides, that it was executed and the plaintiff attempted to perform as its terms required.
This attempt went so far as to remove Lance Dellacroce from project participation and have Tyra Dellacroce step into the managerial role. This was requested by the defendant and the process went forward with her active participation.
Ms. Dellacroce's testimony, supported by the communications she circulated and her job note of January 17, 2000 (Exhibit R) are conclusive of the issue in this case and amply support the plaintiffs contention. CT Page 6145
 CONCLUSION
It is the conclusion of the court that the plaintiff has sustained its burden and proved the existence of a contract and its breach by the defendant. The plaintiff also presented credible evidence as to the charges it sustained as a result of the defendant's failure to perform its terms of the contract.
Judgment may enter for the plaintiff to recover of the defendant the sum claimed in the amount of $20,300 plus taxable costs.
 ___________________ Anthony V. DeMayo Judge Trial Referee
 "APPENDIX A"
[EDITORS' NOTE: APPENDIX A IS ELECTRONICALLY NON-TRANSFERRABLE.]